UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

CLARA MORA, VIRMANIA PAREDES, MARIA
PAREDES, HURIDES ANTONIA PAREDES,
OLENNY TEJADA MINYETY, ELBA LOPEZ, and
PEDRO RODRIGUEZ, on behalf of themselves and
all other similarly situated,

                              Plaintiffs,

            -against-

C AND T HOMECARE SERVICES, LLC and
AGINCARE HOMECARE SERVICES INC.,

                              Defendants.

---------------------------------------------------------------------- X

**No. 23 Civ. 9991**

**COLLECTIVE AND
CLASS ACTION
COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiffs Clara Mora, Virmania Paredes, Maria Paredes, Hurides Antonia Paredes, Olenny Tejada Minyety, Elba Lopez, and Pedro Rodriguez (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of Defendants C and T Homecare Services, LLC and Agincare Homecare Services Inc. (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

1.     Plaintiffs worked as home health aides ("HHA") for Defendants' integrated home health care business.  Plaintiffs and other HHAs often worked up to eighty hours per workweek, but Defendants paid them at the same hourly wage rate for all hours worked, including those over forty per workweek.  Defendants paid live-in HHAs, such as Plaintiffs Clara Mora, Virmania Paredes, Maria Paredes, Olenny Tejada Minyety, Elba Lopez, and Pedro Rodriguez, only thirteen hours per twenty-four-hour shift worked even though live-in HHAs typically got less than five hours of uninterrupted sleep per shift.  Defendants also failed to provide HHAs, including Plaintiffs, with wage notices at the time of their hiring or with accurate wage statements with each wage payment.  Finally,

Defendants paid the wages of several HHAs, such as those of Plaintiffs Clara Mora and Maria Paredes, more than seven days after the end of the week in which they earned their wages despite being "manual workers" who spent more than 25% of their work time performing physical duties.

2.      Plaintiffs bring this action on behalf of themselves and all other similarly situated HHAs of Defendants to recover their unpaid regular and overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"),  and the Wage Theft Prevention Act ("WTPA").

## JURISDICTION

3.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because many of the events and omissions alleged below occurred in this District.

## THE PARTIES

**Plaintiff Clara Mora**

5.      Clara Mora resides in Queens County, New York.

6.      Clara Mora has worked as an HHA for Defendants since approximately November 2018, including as a live-in HHA from approximately her hiring to April 2022.

**Plaintiff Virmania Paredes**

7.      Virmania Paredes resides in New York County, New York.

2

8.      Virmania Paredes has worked as an HHA for Defendants since approximately April 2018, including as a live-in HHA from approximately August to September 2019.

**Plaintiff Maria Paredes**

9.      Maria Paredes resides in New York County, New York.

10.     Maria Paredes has worked as a live-in HHA for Defendants since approximately January 2019.

**Plaintiff Hurides Antonia Paredes**

11.     Hurides Antonia Paredes resides in New York County, New York.

12.     Hurides Antonia Paredes has worked as an HHA for Defendants since approximately December 2019.

**Plaintiff Olenny Tejada Minyety**

13.     Olenny Tejada Minyety resides in Bronx County, New York.

14.     Olenny Tejada Minyety has worked as an HHA for Defendants since approximately April 2020, including as a live-in HHA from approximately her hiring through 2021.

**Plaintiff Elba Lopez**

15.     Elba Lopez resides in Bronx County, New York.

16.     Elba Lopez has worked as an HHA for Defendants since approximately March 2021, including as a live-in HHA from approximately May 2021 to August 2, 2023.

**Plaintiff Pedro Rodriguez**

17.     Pedro Rodriguez resides in Bronx County, New York.

18.     Pedro Rodriguez has worked as a live-in HHA for Defendants since approximately July 2021.

**Defendant C and T Homecare Services, LLC**

19.     Defendant C and T Homecare Services, LLC ("C and T") is a New York limited liability company headquartered at 175-61 Hillside Avenue, Queens, New York 11432.

20.     C and T is a home health care agency providing comprehensive care for ill and aging patients across sixty-two counties in New York State.     *See* https://www.candthomecare.com/about.html (last visited Sept. 25, 2023).

21.     C and T was and still is a covered employer within the meaning of the FLSA and NYLL that, throughout Plaintiffs' employment, employed Plaintiffs and similarly-situated HHAs by, for example, hiring, firing, and disciplining them, directing their work duties, issuing and maintaining payroll and time records, and setting other employment practices and terms.

22.     C and T applies the same employment policies, practices, and procedures to all HHAs in its operation, including practices concerning the frequency of wage payments, overtime compensation, and job site procedures.

23.     C and T assigned HHAs, including Plaintiffs, to work with the company's patients across New York State, including in New York County.

24.     C and T has had an annual gross volume of sales in excess of $500,000 in the three years before the filing of this Complaint, both individually and as a single integrated enterprise with Defendant Agincare Homecare Services Inc.

**Defendant Agincare Homecare Services Inc.**

25.     Defendant Agincare Homecare Services Inc. ("Agincare") is a New York corporation headquartered at 175-61 Hillside Avenue, Queens, New York 11432.

26.     Agincare's assumed named is "CNT Home Care," as reflected in the New York State's Department of State, Division of Corporations website.

27.     Agincare was and still is a covered employer within the meaning of the FLSA and NYLL that, throughout Plaintiffs' employment, employed Plaintiffs and similarly-situated HHAs by hiring, firing, and disciplining them, directing their work duties, issuing and maintaining payroll and time records, and setting other employment practices and terms.

28.     Agincare applies the same employment policies, practices, and procedures to all HHAs in its operation, including policies, practices, and procedures with respect to the frequency of wage payments, payment of overtime wages, and job site procedures.

29.     Agincare assigned HHAs, including Plaintiffs, to work with the company's patients across New York State, including in New York County.

30.     Agincare has had an annual gross volume of sales in excess of $500,000 in the three years before the filing of this Complaint, both individually and as a single integrated enterprise with Defendant C and T.

**Defendants Were a Single Integrated Enterprise**

31.     Throughout Plaintiffs' employment periods, C and T and Agincare have shared a primary office location at 175-61 Hillside Avenue, Queens, New York 11432.

32.     During these periods, C and T and Agincare have had unified operations in the same shared office, using the same staff and record keeping systems to service the same patients.

33.     Throughout Plaintiff Hurides Antonia Paredes's employment, C and T's payroll department would send her paystubs or tax forms from Agincare.  Examples of emails that Hurides Antonia Paredes received from C and T staff Uttam Sarker and Yenice Delgado are included below:



34. Throughout Plaintiffs' employment periods, C and T and Agincare shared clients, job sites, and HHAs. Defendants provided their patients with nearly identical home health services using the same HHAs as part of their shared business activities.

35. For example, throughout 2019, Plaintiff Clara Mora received her biweekly paychecks from either Defendant for the same work performed with the same patient.

36. For example, since at least 2021, both Defendants have used the same application for all of their HHAs to clock-in and clock-out per shift and view their work schedules, regardless of which entity paid the HHAs their wages. *See* https://trimedhomecare.com/wp-content/uploads/2021/03/Downloading-the-HHA-App-and-Profile.pdf (last visited Nov. 7, 2023).

37. Both Agincare and C and T share corporate contact information, such as telephone number 718–424-4200 and email address clinicalservices@canthomecare.com.

38. James Hossain is President of both C and T and Agincare. *See* https://www.linkedin.com/in/james-hossain-16390845/ (last visited Nov. 6, 2023).

39.     C and T and Agincare are a single integrated enterprise for the purposes of the FLSA and NYLL, and cumulatively have an annual gross volume of sales in excess of $500,000 in the three years before the filing of this Complaint

**Defendants Were Plaintiffs' Joint Employers**

40.     Plaintiffs and other HHAs received direction from and were subject to the control of both Defendants as to where, when, and how they performed their daily work duties in the interest of both C and T and Agincare.  For example, Agincare hired and paid Plaintiff Hurides Antonia Paredes, who received Agincare paystubs and tax forms. Despite this, Plaintiff Hurides Antonia Paredes routinely received emails from C and T employees directing her work duties.

41.     On June 15, 2021, Plaintiff Hurides Antonia Paredes and other Agincare HHAs received an email from "evv@candthomecare.com" directing her to complete and submit two acknowledgments to C and T so the company can comply with New York State Department of Health regulations.  Both forms had "Agincare" written in their headings.  The email ends by informing all HHAs that the "entire C [and] T team is here to help you."  Images of this email are included below:

| | |
|---|---|
| **EVV** <evv@candthomecare.com><br>Para: EVV <evv@candthomecare.com> | 15 de junio de 2021, 10:06 |

Dear CNT Caregivers,

We are writing this email to cordially inform you that the New York State Department of Health (NYSDOH) has recently stated that it requires providers of Medicaid-funded Home Health Care Services such as CNT Home Care to keep EVV training attestations – electronically or manually collected from our Members, EVV Staff, and our Caregivers in order to meet the requirements of the 21st Century Cures Act.

Hence, in order to meet the NYSDOH's Electronic Visit Verification (EVV) Training Requirements and Attestation Protocols, you must complete your Acknowledgement of Training Completion form. You can complete either electronically or by printing out the form, signing, scanning and sending it to us.

Please fill out these **two forms** and **Send/Submit** them to us as soon as possible.

And as always, our entire C&T team is here to help you—please call us at (718)424-4200 and ask for an EVV Coordinator if you need additional support.

Stay Safe!

Best Regards,

**EVV Team**

**CNT Home Care**
175-61 Hillside Ave, Suite 403

42.    On September 15, 2023, Plaintiff Hurides Antonia Paredes and other Agincare HHAs received an email from "notifications@candthomecare.com" informing them of likely delays in their commutes due to the United Nations General Assembly in Midtown Manhattan.  The email instructed them to take these delays into consideration when traveling to their work sites.  The email was signed off with "your C [and] T family."  An image of this email is below:



43.    Both Defendants used the same payroll department to pay all HHAs for work performed with the same clients and to store all wage-related documents of HHAs. For example, Plaintiff Clara Mora shared the same employee identification number between both Defendants and would, on occasion, receive checks from both Defendants for the same pay periods.

44.     Under the FLSA, an employer "include[s] any person acting, directly and indirectly, in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

45.     Under the FLSA, multiple "employers" may qualify as a "Joint Employer." The economic reality of Defendants' relationship with the HHAs mandates that C and T and Agincare be treated as joint employers.

46.     C and T and Agincare shared and codetermined the essential terms and conditions of the employment of HHAs, including Plaintiffs, and exercised sufficient control over them to be considered their "employers" under the FLSA and NYLL.

47.     Operating as joint employers, Defendants engaged in a scheme to deprive HHAs, including Plaintiffs, of the benefits and wages required by the FLSA and the NYLL, as is explained below.

## FACTUAL ALLEGATIONS

48.     In the last six years, Defendants have paid HHAs, including Plaintiffs, on a "straighttime basis," meaning at the same hourly rate for all hours worked, including those over forty in a workweek.

49.     Throughout their employment, Plaintiffs and other HHAs working as live-in HHAs were assigned patients with mental or physical conditions requiring around-the-clock care.  As a result, Plaintiffs and other live-in HHAs would often work twenty-four-hour shifts during which they were on call and could neither sleep for at least five consecutive hours per night or leave the patient's residence.  In fact, Defendants' own policy required live-in HHAs working with immobile patients to reposition and change their diapers every two hours.  Despite this, Defendants paid live-in HHAs, including some of the Plaintiffs, for only thirteen hours when they worked twenty-four-hour shifts.

50.     Throughout Plaintiffs' employment with Defendants, HHAs spent well over 25% of their working time caring for patients by preparing meals, cleaning,

physically helping them take their medications, helping them move around their homes and use the toilet, dressing and grooming them, changing their diapers, and bathing, feeding, and cleaning them.

51.     Despite this, Defendants paid HHAs their wages due more than seven days after the end of the workweek in which they earned them for portions of their employment.  Defendants did this by paying HHAs on a biweekly basis five days after the end of the biweekly pay period, or by paying HHAs on a weekly basis but issuing payment more than seven days after the end of the workweek.

52.     By paying Plaintiffs and other HHAs their wages earned late, Defendants robbed them of the time value of their money by preventing them from investing or using their wages as they saw fit within seven days of the end of each workweek.

53.     Defendants failed to furnish HHAs, including Plaintiffs, with a wage notice upon hiring or when their rate of pay changed reflecting , *inter alia*, their overtime wage rates.

54.     Defendants failed to furnish HHAs, including Plaintiffs, with accurate wage statements with each payment of their wages throughout their respective employment periods reflecting, *inter alia*, their overtime wage rates and total hours worked.

55.     Defendants' failure to comply with the WTPA's wage notice and wage statement requirements went beyond mere technical errors or omissions.

56.     Defendants deprived HHAs, including Plaintiffs, of wage notices in their entirety and actively used inaccurate and biweekly wage statements to misrepresent and conceal the total number of hours that HHAs worked per workweek.

57.     By intentionally failing to furnish HHAs with notice of their overtime wage rates on wage notices and providing HHAs with inaccurate and misleading weekly hour

totals in wage statements, Defendants purposely failed to inform HHAs about the overtime wage rates that they should have received for hours over forty in a week and the total hours they worked per workweek, including those over forty.

58.     In other words, Defendants' failure to comply with the WTPA was part of a scheme that intended to, and actually did, deprive HHAs, including Plaintiffs, of the ability to know if they were being paid correctly and, if not, exactly how much compensation they were entitled to, and led to and was intertwined with the underpayment of wages that Plaintiffs allege in this Complaint.

59.     The damages HHAs, including Plaintiffs, suffered because of the underpayment of their wages are directly traceable to Defendants' overt and intentional failure to comply with the WTPA's wage notice and wage statement requirements.

**Clara Mora's Hours Worked and Wages Received**

60.     From approximately November 2018 to April 2022, Clara Mora worked as a live-in HHA and worked three to five twenty-four-hour shifts per week, typically from 8:00 a.m. to 8:00 a.m. the following day per shift.  As a live-in HHA, Clara Mora was unable to sleep more than two or three hours without interruption and had to be on call, unable to leave the patient's home for the full twenty-four-hour shift.  Despite this, Defendants only paid Clara Mora for thirteen hours per twenty-four hour shift worked. Additionally, Defendants paid Clara Mora her regular hourly rate for all hours worked in this period, including those over forty per workweek.

61.     For example, for the workweek of August 23 to August 29, 2021, Clara Mora worked five twenty-four-hour live-in shifts, for which Agincare paid her only sixty-five hours at her regular hourly rate of $18.47 on September 10, 2021.  On this workweek, Clara Mora worked with a patient with special needs and did not sleep for at least five uninterrupted hours per night.  Clara Mora's payroll summary for this week is below:

| W02952 - Mora, Clara | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Department: | Runk: 1 | LIV-IN | Caregiver | 08/24/21 | 13.00 | 18.47 | 240.11 | FWT | 129.27 | NYSDI | 0.60 | NYC-Sick | NYC-Sick | 40.30 | Entry Type: Regular | Voucher#: 27934 |
| Caregiver | 08/23/21 - 08/29/21 | LIV-IN | Caregiver | 08/25/21 | 17.41 | 18.47 | 240.11 | MEDI | 17.41 | NYSIT | | 56.35 | Net Pay: 877.02 |
| Pay Period: | 09/10/21 | LIV-IN | Caregiver | 08/26/21 | 13.00 | 18.47 | 240.11 | NYLOC | 39.34 | SSEC | 74.43 | Net Check: 0.00 |
| Pay Date: | | LIV-IN | Caregiver | 08/27/21 | 13.00 | 18.47 | 240.11 | NYPFL | 6.13 | | | Dir Deposit: 877.02 |
| | | LIV-IN | Caregiver | 08/29/21 | 13.00 | 18.47 | 240.11 | | | | | |
| | | Total Earnings | | 65.00 | | 1,200.55 | Total Taxes | | 323.53 | Total Deductions | 40.30 | |

Agincare Home Care Services Inc
Company-Division (AG2-001)

62.     From approximately November 2018 to April 2022, Defendants would occasionally require Clara Mora to work additional non-live-in shifts on top of her regular schedule.  For example, from August 5 to 18, 2019, Defendants paid Clara Mora 168 hours (*i.e.*, average of eighty-four hours per week), excluding the eleven unpaid hours per live-in shift.  For this pay period, C and T paid Clara Mora $15.22 per hour for eighty-eight hours under check number 54727, issued on August 30, 2019.  For the same pay period, Agincare paid Clara Mora $15.22 per hour for eighty hours under check number 700295, issued on August 30, 2019.  The biweekly payroll summaries for these weeks are below:



63.     After April 2022, Clara Mora stopped working as a live-in HHA and began working four to six shifts per week, with each shift varying from eight to twelve hours in

length. During this period, Clara Mora worked between thirty-two and sixty-six hours per workweek, and Defendants paid her at her regular wage rate for all hours worked.

64.    For example, for the pay period of June 6 to 12, 2022, Agincare paid Clara Mora $18.47 per hour for all fifty-two hours that she worked. The weekly payroll summary for this week is below:

| W62952 - Mora, Clara | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Department: | | Run#: 1 . | HOURLY | Caregiver | 06/06/22 | 8.00 | 18.47 | 147.76 | FWT | 81.42 | NYSDI | 0.60 | NYC-Sick | NYC-Sick | 32.24 | Entry Type: | Regular | Voucher#: | 55052 |
| Caregiver | 06/06/22 - 06/12/22 | | HOURLY | Caregiver | 06/07/22 | 8.00 | 18.47 | 147.76 | MEDI | 13.93 | NYSIT | 41.51 | | | | Net Pay: | 729.14 |
| Pay Period: | | 06/17/22 | HOURLY | Caregiver | 06/08/22 | 8.00 | 18.47 | 147.76 | NYLOC | 29.38 | SSEC | 59.55 | | | | Net Check: | 0.00 |
| Pay Date: | | | HOURLY | Caregiver | 06/09/22 | 8.00 | 18.47 | 147.76 | NYPFL | 4.91 | | | | | | Dir Deposit: | 729.14 |
| | | | HOURLY | Caregiver | 06/10/22 | 8.00 | 18.47 | 147.76 | | | | | | | | | |
| | | | HOURLY | Caregiver | 06/12/22 | 12.00 | 18.47 | 221.64 | | | | | | | | | |
| | | | Total Earnings | | | 52.00 | | 960.44 | Total Taxes | | | 231.30 | Total Deductions | | 32.24 | |

**Agincare Home Care Services Inc**
Company-Division (AG2-001)

## Virmania Paredes's Hours Worked and Wages Received

65.    Throughout her employment with Defendants, except for a two-month period mentioned below, Virmania Paredes worked as a non live-in HHA.

66.    Throughout her employment with Defendants, Virmania Paredez typically worked between forty-eight and sixty hours per workweek across four or five twelve-hour daily shifts.

67.    Throughout her employment, Defendants paid Virmania Paredes at her regular hourly wage rate for all hours worked, including those over forty per workweek.

68.    For example, for the pay period of June 26 to July 2, 2023, Agincare paid Virmania Paredes $20.41 per hour for all sixty of her hours worked. The weekly payroll summary for this week is below:



69.     For a two-month period from August to September 2019, Virmania Paredes worked as a live-in HHA.  During this period, Virmania Paredes worked four twenty-four-hour shifts per workweek, typically from 7:00 a.m. to 7:00 a.m. the following day per shift.

70.     As a live-in HHA, Virmania Paredes was unable to sleep more than two or three hours without interruption, had to be on call, and could not leave the patient's home during each shift.  Despite this, Defendants only paid her thirteen hours per twenty-four-hour shift worked and at the same regular hourly wage rate per hour worked.

**Maria Paredes's Hours Worked and Wages Received**

71.      From January 2019 to September 16, 2020, Maria Paredes worked as a non-live-in HHA with a varying work schedule.

72.     During this period, Defendants paid Maria Paredes on a biweekly basis, five days after the end of each biweekly pay period.

73.     Since approximately September 17, 2020, Maria Paredes has worked as a live-in HHA with the same patient.  During this period, Maria Paredes has worked three to four twenty-four-hour shifts per week, typically from 7:00 a.m. to 7:00 a.m. the following day per shift.  During this period, Maria Paredes has been unable to sleep more

14

than two or three hours per night without interruption and has had to be on call and been unable to leave the patient's home per shift.  Despite this, Defendants only paid Maria Paredes for thirteen hours per twenty-four hour shift worked.

74.     Throughout her employment, Defendants paid Maria Paredes at her regular hourly wage rate for all hours worked, including those over forty per workweek.

75.     For example, from September 4 to 10, 2023, Maria Paredes worked four twenty-four-hour shifts, for which Agincare only paid her thirteen hours per shift (*i.e.*, fifty-two hours for the workweek) at her regular hourly wage rate of $18.47.  The weekly payroll summary for this week is below:

| | | | | | | | Personal Earning Statement | | | ⋁ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Agincare Home Care Services Inc** . | | | | | | | Emp# | SS# | Department | Clock No. | |
| 175-61 Hillside Avenue Suite 403 | | | | | | | W03697 | XXX-XX-0711 | Caregiver | | |
| Jamaica, NY 11432 | | | | | | | | | | | |
| (646) 565-1960 | | | | | | | **MARIA D  PAREDES DE PAYERO** | | | | |
| | Pay Period: | From: 09/04/2023 To: 09/10/2023 | | | | | 2554 Creston Ave 3C | | | | |
| | Pay Date: | 09/15/2023 | Voucher No. | 117093 | | | Bronx, NY  10468 | | | | |
| Earnings | Memo | | | Date | Time In | Time Out | Rate | Hours | Amount | | |
| Live-In | Gomez, Rosa M | . | | 09/04/2023 | | | 18.47 | 13.00 | 240.11 | | |
| Live-In | Gomez, Rosa M | | | 09/05/2023 | | | 18.47 | 13.00 | 240.11 | | |
| Live-In | Gomez, Rosa M | | | 09/06/2023 | | | 18.47 | 13.00 | 240.11 | | |
| Live-In | Gomez, Rosa M | | | 09/10/2023 | | | 18.47 | 13.00 | 240.11 | | |
| | | | Total Current Hours | | | 52.00 | Total Current Amount | | | $960.44 | |
| | | | Total YTD Hours | | | 1,590.00 | Total YTD Amount | | | $32,147.19 | |

## Hurides Antonia Paredes's Hours Worked and Wages Received

76.     Throughout her employment with Defendants, Hurides Antonia Paredes worked as a non-live-in HHA, working between forty-eight and sixty hours per week across four or five twelve-hour shifts.

77.     Throughout her employment, Defendants paid Hurides Antonia Paredes at her regular hourly wage rate per hour worked, including those over forty per workweek.

78.     For example, for the workweek of July 10 to 16, 2023, Agincare paid Hurides Antonia Paredes $20.41 for her forty-eight hours worked.  The payroll summary for this week is below:



**Olenny Tejada Minyety's Hours Worked and Wages Received**

79.    From April 2020 through 2021, Olenny Tejada Minyety worked as a live-in HHA, working four twenty-four-hour shifts per week, typically from 7:00 a.m. to 7:00 a.m. the following day per shift.

80.    As a live-in HHA, Olenny Tejada Minyety was unable to sleep more than three hours per night without interruption and had to be on call, unable to leave the patient's home for the shift.  Despite this, Defendants only paid Olenny Tejada Minyety for thirteen hours per twenty-four-hour shift worked.

81.    Since 2022, Olenny Tejada Minyety has primarily worked as a non-live-in HHA.

82.    Since 2022, Olenny Tejada Minyety has regualarly worked between thirty and eighty-four hours per week across three to seven shifts per workweek, with each shift varying from ten to twelve hours in length.

83.    Since 2022, Olenny Tejada Minyety would occasionally be assigned additional live-in shifts, exceeding the regular hourly total for this workweeks.

84.    Throughout her employment, Defendants have paid Olenny Tejada Minyety at her regular hourly wage rate for all hours worked, including those over forty per workweek.

85.     For example, for the workweek of July 10 to 16, 2023, Agincare paid Olenny Tejada Minyety $18.47 for eighty-four hours worked.  The payroll summary for this week is below:

**Agincare Home Care Services Inc**
175-61 Hillside Avenue Suite 403
Jamaica, NY 11432
(646) 565-1960

**Personal Earning Statement**

| | | | |
|---|---|---|---|
| Empl# | SS# | Department | Clock No. |
| W09336 | XXX-XX-4019 | Caregiver | |

**OLENNY M TEJEDA MINYETY**
887 Southern Blvd 7F
BRONX, NY 10459

Pay Period:  From: 07/10/2023 To: 07/16/2023
Pay Date:   07/21/2023   Check No.   712693

| Earnings | Memo | Date | Time In | Time Out | Rate | Hours | Amount |
|---|---|---|---|---|---|---|---|
| Hourly | Otero, Ramona A | 07/10/2023 | | | 18.47 | 12.00 | 221.64 |
| Hourly | Otero, Ramona A | 07/11/2023 | | | 18.47 | 12.00 | 221.64 |
| Hourly | Otero, Ramona A | 07/12/2023 | | | 18.47 | 12.00 | 221.64 |
| Hourly | Otero, Ramona A | 07/13/2023 | | | 18.47 | 12.00 | 221.64 |
| Hourly | Otero, Ramona A | 07/14/2023 | | | 18.47 | 12.00 | 221.64 |
| Hourly | Otero, Ramona A | 07/15/2023 | | | 18.47 | 12.00 | 221.64 |
| Hourly | Otero, Ramona A | 07/16/2023 | | | 18.47 | 12.00 | 221.64 |

| | | | | |
|---|---|---|---|---|
| Total Current Hours | 84.00 | Total Current Amount | $1,551.48 |
| Total YTD Hours | 942.50 | Total YTD Amount | $17,831.08 |

**Elba Lopez's Hours Worked and Wages Received**

86.     From March 2021 to May 2021, Elba Lopez worked approximately thirty-six hours across three twelve-hour shifts per workweek as a non-live-in HHA.

87.     From May 2021 to August 2, 2023, Elba Lopez continued to work the schedule above plus three additional twenty-four-hour shifts as a live-in HHA per workweek, with each shift typically starting at 9:00 a.m. and ending at 9:00 a.m. the following day.

88.     As a live-in HHA, Elba Lopez was unable to sleep more than three hours without interruption, had to be on call, and was unable to leave the patient's home for the shift.  Despite this, Defendants only paid Elba Lopez for thirteen hours per twenty-four-hour shift worked.  As a result, Defendants paid Elba Lopez only seventy-five of her approximately 108 hours worked per workweek.

89.     From August 3, 2023, to September 2023, Elba Lopez worked only her three live-in HHA shifts.

90.     Throughout this period, Defendants paid Elba Lopez for only thirty-nine hours per workweek, despite working upwards of seventy-two hours per workweek.

91.     Since September 2023, Elba Lopez has worked only one live-in shift per week, or approximately twenty-four hours, but Defendants only pay her thirteen hours.

92.     Throughout her employment, Defendants paid Elba Lopez at her regular hourly wage rate of $17 for all hours that they paid her, including those over forty per workweek.

**Pedro Rodriguez's Hours Worked and Wages Received**

93.      Throughout his employment, Pedro Rodriguez worked as a live-in HHA, working four twenty-four-hour shifts per week, with each shift typically spanning from 10:00 a.m. to 10:00 a.m. the following day.

94.     As a live-in HHA, Pedro Rodriguez was unable to sleep more than two or three hours without interruption, had to be on call, and could not live the patient's home during the shift.  Despite this, Defendants only paid Pedro Rodriguez for thirteen hours per twenty-four-hour shift worked.

95.     Throughout his employment, Defendants paid Pedro Rodriguez at his regular hourly rate rate for all hours worked, including those over forty per workweek.

**COLLECTIVE ACTION ALLEGATIONS**

96.     Plaintiffs bring this action on behalf of themselves and all other similarly situated persons who have worked as HHAs for Defendants in New York within the three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

97.     The FLSA Collective consists of over one hundred HHAs across New York State who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, unlawfully paying them at the same

hourly wage rate for all hours worked, including those over forty per workweek, and by failing to pay them for all overtime hours worked.

98.     Throughout Plaintiffs' employment, Defendants paid Plaintiffs and the FLSA Collective at the same hourly rate for all hours worked in excess of forty per workweek.

99.     Throughout Plaintiffs' employment, Defendants failed to pay Plaintiffs and the FLSA Collective for all overtime hours that they worked per workweek.

100.     Defendants are aware, or should have been aware, that the FLSA requires them to pay one and one-half times the regular rate per overtime hour worked.

101.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective.

102.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  All similarly situated HHAs can be readily identified and located through Defendants' records.  The similarly situated HHAs should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

### RULE 23 CLASS ACTION ALLEGATIONS

103.     Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated non-exempt HHAs who work, or have worked, for Defendants within the six years, plus applicable tolling periods, prior to the filing of the complaint (the "Rule 23 Class").

104.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

105.   The size of the Rule 23 Class is at least one hundred, although the precise number of such employees is unknown.  Facts supporting the calculation of that number are presently within the sole control of Defendants.

106.   Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

107.   Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually, including:

a.   whether Defendants correctly compensated Plaintiffs and the Rule 23 Class for hours worked in excess of forty per workweek;

b.   whether Defendants failed to pay Plaintiffs Clara Mora, Virmania Paredes, Maria Paredes, Olenny Tejada Minyety, Elba Lopez, Pedro Rodriguez, and the Rule 23 Class any wages, including regular and overtime wages, for several of their hours worked per workweek;

c.   whether Defendants failed to pay Plaintiffs and the Rule 23 Class their wages due within seven days of the workweek in which they earned their wages;

d.   whether Defendants failed to furnish Plaintiffs and the Rule 23 class with proper wage notices when they were hired reflecting, *inter alia*, their applicable overtime wage rates, as required by the NYLL; and

e.   whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with accurate wage statements with every payment of wages reflecting, *inter alia*, their total hours worked and applicable overtime wage rates, as required by the NYLL.

108.   Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and the members of the Rule 23 Class work, or have worked, for Defendants at various times within the applicable six-year statutory period, plus applicable tolling periods.  They enjoy the same statutory rights under the NYLL to be paid at the overtime rate for all hours worked over forty in a workweek.  Plaintiffs and

the members of the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

109.    Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

110.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

111.    Plaintiffs have retained legal counsel competent and experienced in wage and hour litigation and class action litigation.

112.    There is no conflict between Plaintiffs and the Rule 23 Class members.

113.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures.  Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.   In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

114.    This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**FIRST CLAIM**
**(NYLL – Failure to Pay Regular Wages)**

115.    Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

116.    Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652, and supporting New York State Department of Labor ("NYDOL") regulations and employed Plaintiffs and the Rule 23 Class.

117.    The NYLL, including Sections 198 and 663, and its supporting regulations require employers to pay employees at their agreed-upon regular rates, which must be at least the minimum wage rate, for each hour worked up to forty per workweek.

118.    The minimum wage provisions of Articles 6 and 19 of the NYLL and the supporting NYDOL regulations apply to Defendants.

119.    Throughout Plaintiffs' employment as live-in HHAs, Defendants failed to pay them and the Rule 23 Class any wages for several hours worked per workday.

120.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class their regular hourly wages.

121.    As a result of Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid regular wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

**SECOND CLAIM**
**(FLSA – Unpaid Overtime)**

122.    Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

123.    Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates, which cannot be less than the applicable minimum wage rate, per hour worked in excess of forty per workweek.

124.     Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs and the FLSA Collective.

125.     Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

126.     Defendants were aware, or should have been aware, that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

127.     Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

### THIRD CLAIM
### (NYLL – Unpaid Overtime)

128.     Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

129.     Pursuant to the NYLL and supporting NYSDOL Regulations, Defendants were required to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times their regular hourly rates of pay for all hours worked in excess of forty per workweek.

130.     Defendants are employers within the meaning of the NYLL §§ 190, 651(6), and supporting NYDOL Regulations, and employed Plaintiffs and the Rule 23 Class.

131.     Defendants failed to pay Plaintiffs and the Rule 23 Class overtime wages equal to one and one-half (1½) times their regular hourly rates of pay, which could not be less than the agreed-upon regular wage rate, per hour worked in excess of forty per workweek.

132.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages.

133.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

### FOURTH CLAIM
### (NYLL § 191 – Frequency of Payments)

134.    Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

135.    In 1967, the New York State legislature amended NYLL § 198 to impose "stronger sanctions" in the form of liquidated damages to compel employers to comply with the requirements of Article 6 of the NYLL, including the frequency of payment requirements set forth in Section 191 of the NYLL.  These "stronger sanctions" serve to "compensate the employee for the loss of the use of money to which he [or she] was entitled," as is the case with late wage payments, because an employee loses "the use of money [when] he or she is never paid, partially paid, or paid late." *Vega v. CM & Assocs. Constr. Mgt., LLC*, 175 A.D.3d 1144, 1146 n. 2 (1st Dep't 2019) (citation omitted).  This concept is not new.  For decades, the United States Supreme Court has likewise interpreted the FLSA, 29 U.S.C. § 201 *et seq.*, on which the NYLL is based, as entitling employees to recover liquidated damages "regardless of whether an employee has been paid wages owed before the commencement of the action." *Id.* (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

136.    Defendants violated Section 191 of the NYLL by paying Plaintiffs Clara Mora, Maria Paredes, and the Rule 23 Class their wages more than seven days after the end of the workweek in which they earned their wages.  As "manual workers" within the meaning of the NYLL, they should have been paid "weekly and not later than seven calendar days after the end of the week the[ir] wages are earned."  N.Y. Lab. L. § 191(1)(a)(i).

137.    Plaintiffs and the Rule 23 Class spent more than 25% of their working time performing physical tasks.

138.    Plaintiffs and the Rule 23 Class were non-exempt employees who did not hire, fire, set the work hours, or direct the work duties of other HHAs.

139.    Plaintiffs and the Rule 23 Class were "manual workers" within the meaning of NYLL § 191(1)(a).

140.    Defendants should have paid Plaintiffs Clara Mora, Maria Paredes, and the Rule 23 Class on a weekly basis "and not later than seven calendar days after the end of the week in which the wages were earned."  N.Y. Lab. L. § 191(1)(a).

141.    Because Defendants failed to pay Plaintiffs Clara Mora, Maria Paredes, and the Rule 23 Class on a weekly basis, in addition to other recovery available to them as set forth in this Complaint, Plaintiffs Clara Mora, Maria Paredes, and the Rule 23 Class are entitled to recover liquidated damages equal to their wages paid more than seven days after the end of the work in which they earned those wages.

**FIFTH CLAIM**
**(WTPA – Failure to Provide Accurate Wage Statements)**

142.    Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

143.    The WTPA requires employers to provide employees with an accurate wage statement with each payment of wages.

144.    As part of their scheme to avoid paying Plaintiffs and the Rule 23 their regular and overtime wages due, Defendants failed to furnish Plaintiffs and the Rule 23 Class with a statement with each wage payment accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross

25

wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

145.   Defendants failed to pay Plaintiffs and the Rule 23 Class all of their wages due and attempted to conceal their failures to do so by issuing them biweekly wage statements that did not reflect all of their hours worked and wage rates due.

146.   As a result of Defendants' violations of NYLL § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

**SIXTH CLAIM**
**(WTPA – Failure to Provide Wage Notice)**

147.   Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

148.   The WTPA requires employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

149.   As part of their scheme to avoid paying Plaintiffs and the Rule 23 their regular and overtime wages due and in violation of NYLL § 195(1), Defendants failed to furnish Plaintiffs and the Rule 23 Class, at the time of hiring or whenever the rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

150.    In an attempt to conceal their obligation to pay HHAs overtime wages, Defendants chose not to furnish Plaintiffs and the Rule 23 Class with a wage notice setting forth each employee's regular and overtime wages due per pay period.

151.    As a result of Defendants' violations of NYLL § 195(1), Plaintiffs and the Rule 23 Class are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1–b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully requests that this Court:

a.    certify this case as a class action pursuant to Rule 23 for the class of employees described above, appoint Plaintiffs as class representatives, and designate Plaintiffs' counsel as Class Counsel;

b.    designate this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c.    declare that Defendants violated the regular wage provisions of the NYLL;

d.    declare that Defendants violated the overtime wage provisions of the FLSA and NYLL;

e.    declare that Defendants violated the frequency of payments provision of the NYLL;

f.    declare that Defendants violated the wage notice and wage statement provisions of the WTPA;

g.      declare that Defendants' violations of the FLSA, NYLL, and WTPA were willful;

h.      award Plaintiffs and the Rule 23 Class unpaid regular and overtime wages;

i.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

j.      award Plaintiffs and the Rule 23 Class liquidated damages as a result of Defendants' failure to pay wages on time in violation of the NYLL;

k.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish them with wage notices upon hiring and with accurate wage statements at the end of each pay period, in violation of the WTPA;

l.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

m.      award Plaintiffs and the Rule 23 Class pre- and post-judgment interest under the NYLL;

n.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

o.      award such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated:  New York, New York
        November 13, 2023

PECHMAN LAW GROUP PLLC

By: _____
    Louis Pechman
    Gianfranco Cuadra
    Christian Mercado
    Pechman Law Group PLLC
    488 Madison Avenue, 17th Floor
    New York, New York 10022
    Tel.: (212) 583-9500
    pechman@pechmanlaw.com
    cuadra@pechmanlaw.com
    mercado@pechmanlaw.com

    *Attorneys for Plaintiffs, the Putative FLSA*
    *Collective, and Putative Rule 23 Class*